UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| MARIA ELISA ZEPEDA,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No. 2:21-cv-01303-EJY<br><br>**ORDER** |

Pending before the Court is Plaintiff's Motion for Reversal (ECF No. 20), which the Court has considered, Defendant's Cross-Motion to Affirm (ECF Nos. 21), Defendant's Response to Plaintiff's Motion (ECF No. 22), and Plaintiff's Reply (ECF No. 23).

**I.     Procedural Background**

Plaintiff filed her application for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "SSA" or "Act") in March 2019. Administrative Record ("AR") 216-219. The Social Security Commissioner initially denied Plaintiff's application on July 31, 2019 (AR 124), and again after reconsideration on January 15, 2020. AR 135. A hearing in front of the Administrative Law Judge ("ALJ") was held on November 25, 2020, after which the ALJ found Plaintiff was not disabled. AR 22-37. This decision became final and appealable after the Social Security Administration (the "Administration") Appeals Council denied Plaintiff's request for review. AR 1-3; 42 U.S.C. § 405(g).

**II.    The Standard of Review**

A court reviewing a decision of the Commissioner of Social Security must be affirmed if the decision is based on correct legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation and quotation marks omitted). In reviewing the alleged errors, the

1  Court must weigh "both the evidence that supports and detracts from the conclusion." *Martinez v.*
2  *Heckler*, 807 F.2d 771, 772 (9th Cir. 1986) (internal citations omitted).

3        "When the evidence before the ALJ is subject to more than one rational interpretation, we
4  must defer to the ALJ's conclusion." *Batson*, 359 F.3d at 1198, *citing Andrews v. Shalala*, 53 F.3d
5  1035, 1041 (9th Cir. 1995).  However, a reviewing court "cannot affirm the decision of an agency on
6  a ground that the agency did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*,
7  454 F.3d 1050, 1054 (9th Cir. 2006) (internal citation omitted).  Finally, the Court may not reverse
8  an ALJ's decision on account of an error that is harmless.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th
9  Cir. 2005) (internal citation omitted).  "[T]he burden of showing that an error is harmful normally
10 falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409
11 (2009).

12 **III.    Establishing Disability Under the Act**

13       To establish disability under the SSA, there must be substantial evidence that:

14     (a)    the claimant suffers from a medically determinable physical or mental
15 impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and

16     (b)    the impairment renders the claimant incapable of performing the work that the
17 claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

18 *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999), *citing* 42 U.S.C. § 423(d)(2)(A).  "If a claimant
19 meets both requirements," the claimant is disabled.  *Id*.  The ALJ employs a five-step sequential
20 evaluation process to determine whether a claimant is disabled within the meaning of the Act.  *Bowen*
21 *v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a).  Each step is potentially dispositive
22 and "if a claimant is found to be 'disabled' or 'not-disabled' at any step in the sequence, there is no
23 need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (internal citation omitted); 20 C.F.R.
24 § 404.1520.  The claimant carries the burden of proof at steps one through four, and the Commissioner
25 carries the burden of proof at step five.  *Tackett*, 180 F.3d at 1098.

The five steps are:

Step 1. Is the claimant presently working in a substantially gainful activity? If so, then the claimant is "not disabled" within the meaning of the SSA and is not entitled to disability insurance benefits. If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two. 20 C.F.R. § 404.1520(b).

Step 2. Is the claimant's impairment severe? If not, then the claimant is "not disabled" and is not entitled to DIB. If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three. 20 C.F.R. § 404.1520(c).

Step 3. Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "disabled" and therefore entitled to DIB. If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. 20 C.F.R. § 404.1520(d).

Step 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "not disabled" and is not entitled to DIB. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step. 20 C.F.R. § 404.1520(e).

Step 5. Is the claimant able to do any other work? If not, then the claimant is "disabled" and therefore entitled to DIB. 20 C.F.R. § 404.1520(f)(1). If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert [("VE")], or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to DIB. 20 C.F.R. §§ 404.1520(f), 404.1562. If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to disability benefits. *Id.*

*Id*. at 1098-99 (internal alterations omitted).

**IV.     Summary of the ALJ's Decision**

At step one of the five step sequential process, the ALJ found Plaintiff "meets the insured status requirement of the … Act through December 31, 2021." AR 24. At step two, the ALJ found that Plaintiff suffers from severe impairments including "left shoulder supraspinatus calcific tendinitis; right shoulder bursal sided tearing; degenerative disc disease of the cervical spine w/spondylosis and radiculopathy; migraine; degenerative disc disease of the lumbar spine with spondylosis and radiculopathy; fibromyalgia; right shoulder calcific tendinitis; left shoulder tendinitis; chronic fatigue syndrome; major depressive disorder; panic disorder; adjustment disorder;

generalized anxiety disorder; bipolar II disorder; and PTSD (20 CFR 404.1520(c))." AR 25. The ALJ further found Plaintiff suffers from several non-severe ailments including "insomnia (3F/2); obstructive sleep apnea (8F/11); anemia (3F/4); hypersomnia (3F/11); GERD (3F/22); fatigue (8F/24); vitamin D deficiency (28F/5) and hiatal hernia (30F/37)." *Id*. The ALJ found "these impairments … non-severe because the medical evidence establishes that … [Plaintiff] has only a slight abnormality that has no more than a minimal effect on her ability to perform basic work activities. In other words, the record does not show that these conditions more than minimally limited the claimant's ability to engage in basic work activity for at least twelve months." *Id*.

At step three, the ALJ found that Plaintiff's impairment or combination of impairments did not meet or medically equal the severity of any "listed" impairment in 20 C.F.R. 404.1520 (d), 20 C.F.R. 404.1525, and 20 C.F.R. 1526. AR 26. In preparation for step four, the ALJ found that Plaintiff "has the residual functional capacity ("RFC")[1] to perform:

> light work, as defined in 20 CFR 404.1567(b), except she must be allowed to stand up to 5 minutes after every 30 minutes of sitting, and to sit down up to 5 minutes after every 30 minutes of standing, while remaining on task. She can occasionally reach overhead with both upper extremities. She can frequently operate hand controls, reach in all other directions, push, pull, handle, finger, and feel with both upper extremities. She can occasionally push, or pull or operate foot controls with both lower extremities. She can occasionally kneel, crouch, stoop, balance, and crawl, and can occasionally climb stairs and ramps. She can never climb ladders, ropes and scaffolds, and can never be exposed to unprotected heights and moving mechanical parts. She can tolerate occasional exposure to vibration. In addition, she is able to understand, carry-out, and remember simple instructions, and make simple work related decisions. She will be off task 10% of the workday.

AR 27. At step four, the ALJ determined that Plaintiff "is unable to perform any part of past relevant work." AR 35. The ALJ found Plaintiff is a younger individual (41), has at least a high school diploma and, because Plaintiff was ultimately found not disabled, the transferability of skills was not material to the ALJ's determination. *Id*. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, there are jobs in significant numbers in the national economy that Plaintiff is able to perform, and she is not disabled. AR 35-37. Therefore, the ALJ denied Plaintiff's applications for DIB. *Id*. at 37.

---

[1] "Residual functional capacity" is defined as "the most you can still do despite your limitations." 20 C.F.R. § 416.945(a)(1).

4

## V. Summary of the Vocational Expert's Testimony

The Vocational Expert ("VE") responded to a series of hypotheticals asked by the ALJ. The first hypothetical asked the VE to:

> assume an individual of the claimant's age, education and work experience. Can perform work at the light exertional level as defined by the regulations. The individual can occasionally reach overhead with both upper extremities. The individual can frequently operate hand controls, reach in all other directions, push, pull, handle, finger and feel with both upper extremities. The individual can occasionally push or pull or operate foot controls with both lower extremities.
>
> The individual can occasionally kneel, crouch, stoop, balance and crawl and can occasionally climb stairs and ramps. The individual can never climb ladders, ropes or scaffolds and can never be exposed to unprotected heights and moving mechanical parts. The individual can tolerate occasional exposure to vibration. In addition, assume that the individual is able to understand, carry out and remember simple instructions and make simple work-related decisions. Would the individual be able to perform the claimant's past relevant work either as performed or as performed in the national economy?

AR 64-65. The VE explained the hypothetical individual would not be able to perform Plaintiff's past relevant work because "the last part about simple instruction[s]" would prevent her from doing so. AR 65. However, when asked if there were jobs in the national or regional economy the hypothetical person could perform, the VE testified there are and that these include "price marker, … [r]outing clerk, … [a]nd … assembler" jobs. *Id.*[2]

The VE was next asked to consider a second hypothetical person who is the Plaintiff's age, has the same education and work experience as Plaintiff, the same RFC as Plaintiff, "but … must be allowed to stand up to five minutes after every 30 minutes of sitting, will have to sit down after five minutes after every 30 minutes of standing while remaining on task. The individual will be off task ten percent of the workday." AR 65-66. The VE confirmed that the same jobs identified after considering the first hypothetical would be available to such an individual. AR 66. In the third hypothetical, the VE was asked to make the same assumptions made in the first two hypotheticals,

---

[2] All of these jobs were classified by the VE as SVP 2, light. AR 65. This means that these positions fall in the unskilled category of occupations. Light work is defined as involving "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. 404.1567(b).

5

1  "but the individual must lie down 20 minutes every hour, the individual must sit or stand at-will, the
2  individual will be off task 20 percent of the workday and absent from work two or more days per
3  month. *Id*. The VE testified that "[t]hese factors in combination and individually are work preclusive
4  …." AR 67.

5       When cross examined by Plaintiff's counsel, the VE was asked what the impact would be if
6  all the same assumptions were made as stated in hypothetical one, except that reaching in all
7  directions was modified to limit reaching in all directions to "occasional." *Id*. The VE responded
8  this change would eliminate all jobs he identified. AR 68. The same result would follow if handling,
9  fingering and feeling bilaterally was limited to "occasional"; that is, it would eliminate all the
10  positions the VE stated Plaintiff could perform. *Id*.

11  **VI.    The Issue Presented**

12       Plaintiff presents a narrow issue on appeal. Plaintiff contends that the RFC determination
13  "was the result of the ALJ's failure to properly evaluate the opinion of Dr. Prabhu." ECF No. 20 at
14  9. Plaintiff argues the case should be remanded because when the ALJ determined Dr. Prabhu's
15  opinions regarding Plaintiff were of "limited persuasiveness," the finding was "illegitimate and not
16  supported by substantial evidence." *Id*. at 10.[3]

17  **VII.    The ALJ's findings regarding Dr. Prabhu's opinions**

18       In coming to his conclusion regarding Plaintiff's RFC, the ALJ summarized the medical
19  evidence pertaining to Plaintiff's mental health issues in 2018, 2019, and 2020. The ALJ found that
20  "objective medical evidence establishes that the claimant was diagnosed with major depressive
21  disorder; panic disorder; adjustment disorder; generalized anxiety disorder; bipolar disorder and
22  PTSD." AR 31. However, as stated, the ALJ found Dr. Prabhu's opinions to be of "limited
23  persuasiveness." AR 34. The ALJ cited to Dr. Prabhu's: (1) August 27, 2019 letter stating that
24  Plaintiff is "chronically and severely ill" suffering from mental health issues of bipolar disorder, and
25  generalized anxiety disorder (AR 629); (2) Mental Health Provider Report, dated October 2, 2020,

---

[3] Dr. Prabhu's findings state: "due to her multiple medical conditions, … [Plaintiff] is unable to perform her job duties. She can not [sic] follow simple instructions or concentrate. She keeps on dropping things on the floor due to her poor coordination. Mrs. Maria Zepeda is disabled and unable to be gainfully employed." AR 779. Dr. Prabhu diagnosed Plaintiff with generalized anxiety disorder, bipolar disorder, and major depression. *Id*.

stating Plaintiff suffers from "severe anxiety" and has "difficulties focusing/concentrating" (AR 774); and (3) October 2, 2020 letter stating Plaintiff suffers from "Bipolar Disorder," "Generalized Anxiety disorder," and "Major Depression." AR 779. The ALJ contrasted these findings to: (1) an Adult Uniform Mental Health Assessment, completed by Jonathan Murray, a CSW intern, on January 28, 2020, in which boxes were checked indicating Plaintiff had no impairment in perception, intelligence functioning, orientation, insight, judgment, memory or thinking (AR 639-40); (2) Dr. Prabhu's February 21, 2020 medical note, which the ALJ identifies as showing Plaintiff "was doing okay while medically compliant" (AR 34); and (3) a May 12, 2020 medical note signed by physician assistant Nicole Hartman ("PA Hartman") stating Plaintiff reported she was doing "okay but … still dealt with some ups and downs, [and] … the increased dose of the Wellbutrin has helped her a bit but she notes the situational factors are the biggest … factor." AR 702. This May 2020 note by PA Hartman further states Plaintiff had not suffered a severe depression episode, but has extremely elevated anxiety due to her son's drug problems, has not had alprazolam filled in a long time, and has been suffering more panic attacks lately. *Id*.

**VIII.   The New Regulatory Scheme for Evaluating Medical Opinions**

There is no disagreement between the parties that because Plaintiff filed her application for DIB after March 27, 2017, the ALJ properly applied new regulations regarding the evaluation of medical evidence. These new regulations establish there is no longer a hierarchy of medical opinions an ALJ applies. 20 C.F.R. 404.1520c(a). The regulations governing claims filed on or after March 27, 2017 no longer mandate particularized procedures the ALJ must follow in considering opinions from treating sources. *See* 20 C.F.R. § 404.1520c(b) (the ALJ "is not required to articulate how [he] considered each medical opinion or prior administrative medical finding from one medical source individually."). The new regulations require the ALJ to explain how he/she considered factors including supportability and consistency—the two most important factors in determining the persuasiveness of a medical opinion or finding. 20 C.F.R. 404.1520c(c)(1) and (2).[4]

---

[4]   Supportability is defined as "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. 404.1520c(c)(1). Consistency is defined as "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with

7

Moreover, courts historically looked disfavorably on ALJ decisions that appeared not to consider all evidence in the record, but instead cherry-picked evidence that seemingly supported a decision already made. 42 U.S.C. § 423(d)(5)(B) (requiring an ALJ base the decision on "all the evidence available in the [record]."); *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (the court may not affirm where the ALJ "picked out a few isolated instances of improvement" to support the denial of benefits). As of the date of this Order, the Ninth Circuit has not articulated how this historic law may apply to supportability or consistency findings under the new regulations. Nonetheless, numerous district courts around the country have remanded where evidence supporting or consistent with a rejected medical opinion was ignored. *See, e.g.*, *White v Comm'r*, Case No. 1:20-CV-00588-JDG, 2021 WL 858662, **20-21 (N.D. Ohio Mar. 8, 2021) (finding the ALJ failed to explain why a physician's limiting opinion was not persuasive in the face of evidence that supported and was consistent with the opinion; relying on prior circuit precedent that "[i]f relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked"); *Kaehr v. Saul*, Case No. 3:19-CV-1171-PPS, 2021 WL 321450, **2-4 (N.D. Ind. Feb. 1, 2021) (finding the ALJ "cherry-picked evidence, and thus didn't provide substantial evidence to support his conclusion," where the decision did not discuss the supportability of a physician's limiting opinion and did not consider the totality of the record in evaluating the opinion's consistency; citing prior circuit precedent applicable to the new regulations); *Vellone v Saul*, Case No. 1:20-cv-00261-RA-KHP, 2021 WL 319354, **9-10 (S.D.N.Y. Jan. 29, 2021) (finding the ALJ's RFC determination "not supported by substantial evidence" where the ALJ "cherry-picked treatment notes that supported his RFC determination [at times indicating normal gait and spine] while ignoring equally, if not more significant evidence [indicated abnormal gait and worsening lower back pain] in those same records"; relying on cases prohibiting cherry-picking); *Etherington v. Saul*, Case No. 1:19-cv-475-JVB-JPK, 2021 WL 414556, **4-5 (N.D. Ind. Jan. 21, 2021) (finding "a good deal in the record that cuts against [the ALJ's supportability and consistency] determination," and noting "this evidence received no such attention"; relying on prior circuit precedent prohibiting cherry-picking); *Audrey P. v. Saul*, Case

the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at 404.1520c(c)(1) and (2)

8

No. 20-92-MSM 2021 WL 76751, **9-10 (D.R.I. Jan. 8, 2021) (remanding for further consideration where "dramatic example[s]" of cherry-picking led the ALJ to ignore a source's "overarching conclusion that Plaintiff suffered from significant and unresolved '[f]unctional difficulty includ[ing] standing, sitting, bending over and walking all 2/2 pain'"); *Pearce v. Saul*, Case No. 0:20-1623-PJG, 2020 WL 7585915, **4-6 (D.S.C. Dec. 22, 2020) (noting the plethora of medical records supporting and consistent with a physician's limiting opinion when determining the ALJ cherry-picked the evidence to discount this opinion, and holding that "[a]lthough the ALJ appears to have considered the appropriate factors, [she] failed to explain how the evidence supports her conclusion and meaningful review is frustrated"; relying on recent circuit precedent under the old regulations stating that "specious inconsistencies cannot reasonably support a rejection of medical opinions or other evidence"); *see also*, *e.g.*, *Branham v. Comm'r*, Case No. 1:20-cv-00164-SLC, 2021 WL 1589378, at *6 (N.D. Ind. Apr. 23, 2021); *Tumlin v. Comm'r*, Case No. 2:19-cv-00457-JLB-NPM, 2021 WL 1214880, at *10 (M.D. Fla. Mar. 31, 2021); *Drake v. Comm'r*, Case No. 1:19-CV-02419, 2021 WL 1214689, at *4 (N.D. Ohio Mar. 31, 2021).

IX.   **Discussion**

    A.   <u>Plaintiff's Arguments in Support of Remand Based on the ALJ's Treatment of Dr. Prabhu's Opinions</u>.

Plaintiff contends that by only relying on "four pages" of the record, the ALJ cherry-picked evidence to suit his narrative that Plaintiff is not disabled. ECF No. 20 at 11. Plaintiff cites to numerous pages in the Administrative Record she contends support Dr. Prabhu's opinions including pages from Dr. Prabhu's records (AR 385, 389, 557, 647, 650) as well as pages from other providers including PA Hartman, Cienna Nielsen, Jonathan Murray, and Dr. Alok Saxena. ECF No. 20 at 12-13 *citing* AR 350, 353, 357, 423, 486, 488, 491, 633-34, 639, 640, 888, 889-90. Plaintiff takes issue with the ALJ's determination that Dr. Prabhu's opinions, "by their terms, appear intended to be a temporary assessment, rather than a permanent assessment of the claimant's functioning on an ongoing and longitudinal basis." *Id*. (referring to AR 34). Plaintiff argues this is a mischaracterization of Dr. Prabhu's opinion warranting remand. *Id*. at 14. Plaintiff admits that "Dr. Prabhu's opinion relating to Plaintiff's inability to work" is properly an issue reserved for the ALJ,

and Plaintiff states that this opinion is the only one issued by the doctor that could be considered temporary. *Id*. But, Plaintiff contends the ALJ should have ignored these opinions and focused on Dr. Prabhu's opinions regarding Plaintiff's functional limitations, which is an issue not reserved for the ALJ. *Id*. Plaintiff argues Dr. Prabhu's opinions regarding Plaintiff's ability to follow instructions and concentrate are ones he rightfully issued, and that these opinions are supported by the doctor's treatment notes and other evidence in the record. *Id*. Finally, Plaintiff takes issue with the ALJ's statement that Dr. Prabhu's opinions are "unsupported by a specific function-by-function assessment of the claimant's limitations …." *Id*. at 15 referencing AR 34. According to Plaintiff, the ALJ's failure to provide an explanation for this statement was also reversible error. *Id*. The above errors, Plaintiff argues, were not harmless because had Dr. Prabhu's opinions been properly evaluated, Plaintiff would have been found disabled. *Id.*

      B.    <u>Defendant's Argument Supporting the ALJ's Evaluation of Dr. Prabhu's Medical Opinions</u>.

Defendant argues Dr. Prabhu offered two medical opinions that were memorialized in February and October 2020. ECF No. 21 at 7 *citing* AR 627, and, collectively, AR 774 and 779. Defendant summarizes the ALJ's findings, thereafter points to Plaintiff's failure to argue the supportability and consistency factors that apply under the new regulations, and contends that despite Plaintiff's argument regarding substantial evidence and alleged cherry-picking by the ALJ, "where the evidence is susceptible to more than more rational interpretation, it is the ALJ's conclusion that must be upheld." *Id*. at 8-9 *quoting Shaibi v. Berryhill*, 883 F.3d 1102, 1108 (9th Cir. 2018) (internal brackets and additional citations omitted). Defendant further argues that Plaintiff's contention that "the ALJ's decision was against substantial evidence in the record" miss-frames the issue before the Court because the question is "not whether substantial evidence exists against the decision, but, rather, whether substantial evidence supports the decision." *Id*. at 9 *quoting West v. Berryhill*, Case No. 18-cv-00092-DKW-RT, 2019 362259, at *3 n.1 (D. Haw. January 29, 2019).

Defendant further argues that the cites on which Plaintiff depends to demonstrate a lack of substantial evidence are to her subjective complaints and that a diagnosis of impairment does not equal disability. *Id*. at 9-10 (citations omitted). Defendant contends that Dr. Prabhu's treatment notes

do not contain "mental status findings." *Id*. at 10. Defendant points to what constitute "objective medical evidence" under the applicable regulations and notes there is none in the record. *Id*. at 11 *citing id.* at 10 n.8 (referencing 20 C.F.R. 404.1513(a)(1), 404.1502(c), and 404.1502(g)). Defendant says the ALJ acknowledged certain records support mental status findings relevant to her claims (*id. citing* AR 488, 353, 423), but that Plaintiff ignores records demonstrating her mental status was good, Plaintiff had no functional limitations, and that she had, *inter alia*, "no perceptual abnormalities, among other things." *Id*. at 11-12 *citing* AR 423, 426, 437, 440. Defendant argues the Adult Uniform Mental Health Assessment, at AR 639-40, directly contradicts Dr. Prabhu's opinions, and that the ALJ was free to rely on the Assessment (and other evidence) rather than on Dr. Prabhu. ECF No. 21 at 13.

Arguing with Plaintiff's contention that the ALJ erred when he characterized Dr. Prabhu's opinions as reflecting "a temporary assessment," Defendant points to Dr. Prabhu's February 2020 letter stating Plaintiff is "on *temporary* leave and still can't go back to work," as well as the October 2020 Benefits Assessment Form that includes the pre-printed question: "Is a return to work part of the treatment plan?" AR 774 (emphasis added). In response, Dr. Prabhu checked the "No" box, but also wrote "*currently* unable to work." *Id.* (emphasis added). Based on these arguments, Defendant states that "the ALJ's interpretation of the rest of the opinion was entirely reasonable" and that Plaintiff offers nothing more than an alternative interpretation of Dr. Prabhu's opinion letters. ECF No. 21 at 13-14.

With respect to the ALJ's finding (at AR 34) that Dr. Prabhu's opinion could be ascribed "limited persuasiveness" because he fails to support his opinions with a "specific function-by-function assessment of claimant's limitations," Defendant argues that Ninth Circuit precedent holds "[a]n ALJ does not err by not incorporating a physician's opinion when the physician had not assigned any specific limitations on the claimant." ECF No. 21 at 14 *citing Youngblood v. Berryhhill*, 734 Fed.Appx. 496, 498 (9th Cir. 2018) (unpublished) (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (additional citations omitted); *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020); *Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008).

      C.      <u>The Court's Analysis</u>.

As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). This Court may "not substitute its judgment for that of the [ALJ]." *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).

Here, Plaintiff appeals the denial of DIB based on the ALJ's finding that Dr. Prabhu's opinions regarding Plaintiff's mental health was of limited persuasiveness. ECF No. 20 at 10. Importantly, however, the ALJ did not conclude Plaintiff suffers from no physical or mental health impairments (*see* AR 29-31), but instead found that these impairments, together with Plaintiff's pain and side effects of medication, do not prevent Plaintiff from "making a successful adjustment to other work that exists in significant numbers in the national economy" as testified to by the VE. AR 35-37.

In coming to his conclusion regarding Plaintiff's mental health, the ALJ did not limit his review of Plaintiff's mental health to four pages as Plaintiff contends (albeit he did cite to only four pages of records from Dr. Prabhu). Rather, the ALJ cited to numerous pages of records, including from Drs. Ana Olivares and J. Collado. *Compare* ECF No. 20 at 11 *and* AR 33-35 (and citations therein). Drs. Olivares and Collado opined that Plaintiff had no or mild limitations to her ability to understand, remember, and apply information, no limitation in her ability to interact with others or adapt and manage herself, moderate limitation in her ability to concentrate, persist or maintain pace, and is able to sustain adequate attention and concentration to complete simple tasks. AR 33-34. Plaintiff does not address these findings at all. In fact, Plaintiff does not argue the conclusions by Drs. Olivares and Collado are unsupported by the record or otherwise erroneous.

Nonetheless, in her Motion, Plaintiff cites numerous records in support of her claim that substantial evidence supports Dr. Prabhu's opinions erroneously ascribed limited persuasiveness. These include:

- AR 439. March 20, 2018: PA Hartman's medical notes: Plaintiff reports panic attacks and "[s]he is concerned" about anxiety symptoms that she reports as "very high." However, PA Hartman reports Plaintiff's mood as "good," affect "[c]alm, stable at time of appt.," insight/judgment "fair," and GAF (global assessment of functioning) as "good." AR 440.

- AR 436. August 2, 2018, PA Hartman's medical notes: Plaintiff self reported she ran out of all her medications and was not doing well. She was given a new medication she never tried. Plaintiff reported panic attacks and high anxiety, getting "irate very easily," "blowing up at people," mood swings and that her therapist says "she likely has PTSD." The mental status exam conducted by PA Hartman showed Plaintiff's speech at a "regular rate and rhythm, normal volume, no difficulties with articulations"; her thought process and content were "concrete, logical, goal directed," not delusional, and not obsessive. PA Hartman noted Plaintiff's mood was "good," her affect "[c]alm" and stable at the time of the appointment. Plaintiff's GAF was stated as good. AR 437.

- AR 485. September 5, 2018, Report from Sunrise Hospital Emergency: Plaintiff reported to the emergency room complaining of "increasing anxiety and depression due to increased stress, especially at work. … [and that] the stress … [was] so bad she could not take it anymore and wants help." In the assessment, the notes reflect Plaintiff appeared anxious and tearful, and reported Ativan was "not helping." AR 490. The Hospital notes include that Plaintiff appears to suffer from anxiety and depression. AR 492.

- AR 350-375. September 6, 2018, Seven Hills Hospital Admission Date: The intake notes indicate Plaintiff's son called 911 because she was experiencing numerous physical symptoms and, when in the ambulance, she told the attendant that "she could not carry on like this in pain and anxiety." The intake notes states Plaintiff is suffering from physical pain made worse by anxiety, but that she did not provide any history regarding mania or functional psychosis. Plaintiff mentioned increasing irritability, poor frustration tolerance, and anger management issues all of which she attributed to severe pain. The mental status exam reported normal speech patterns, thoughts were goal directed, no overt delusions, no perceptual abnormalities, no suicidal ideations, and Plaintiff's mood was anxious and dysphoric. Plaintiff was found to have fair attention and concentrations, and limited insight, judgment, and impulse control. AR 353. Plaintiff's discharge summary indicated her mood had improved and was now euthymic, she had good eye contact and rapport with the provider; she was negative for acute anxiety, paranoia, and hallucinations; Plaintiff was cognitively alert, her memory was intact, and insight, judgment, and impulse control improved. AR 357. Plaintiff's attention and concentration were stated as fair. *Id*.

- AR 426, 430. November 30, 2018 and October 11, 2018, PA Hartman's notes: The reports were identical to the above, with the exception of Plaintiff's affect being "tearful" on November 30, 2018.

- AR 423. PA Hartman's medical notes: The mental status exam states Plaintiff's speech is normal; her thought process is concrete, logical, and goal directed; her thought content is without delusions and not obsessive; but her mood was poor, her affect was tearful, and her judgment/insight was fair.

- AR 385. March 11, 2019, Dr. Prabhu's medical notes: After Plaintiff's self-report of her illnesses, and noting Plaintiff cried during their conversation, the review of symptoms states: "Psychological: No anxiety, no depression, and no sleep disturbance." Dr. Prabhu's assessment includes Bipolar Disorder, Depression, and Anxiety Disorder. The Plan includes having Plaintiff follow up with her psychiatrist. There is no mention of impairment or an inability to work. AR 387, 389-91.

- AR 392, 396. May 10, 2019, Dr. Prabhu's medical notes: After making the same entry regarding crying during their conversation and listing the same psychological assessment stated on March 11, 2019, the notes indicates Plaintiff reported she was

13

       unable to perform her job functions due to "multiple medical condition."  However, there is no note by Dr. Prabhu indicating this is or is not his finding as well.  AR 394-397.

- AR 597.  September 17, 2019, Dr. Prabhu's medical notes:  After Plaintiff's self-report of anxiety attacks, the notes include the same psychological and diagnostic assessment, with a plan to review and renew Plaintiff's medications at her next visit.  AR 560-562.  There is no mention or discussion by Dr. Prabhu regarding whether Plaintiff is back to work or able to work at the time of this note.  AR 557-562.

- AR 633-34.  January 28, 2020, Adult Uniform Mental Health Assessment:  These pages are Plaintiff's self-assessment and report suicidal ideations, with no plan, due to conflict with Plaintiff's 15 and 16 year old.  The following Mental Status Assessment by the CSW reflects Plaintiff's appearance was appropriated, her mood was depressed, but no impairment of perceptions, intelligence functioning, orientation, insight, judgment, memory or thinking.  AR 638-40.

- AR 647.  February 21, 2020, Dr. Prabhu's medical notes:  Plaintiff reports she is "going through some anxiety attacks."  Dr. Prabhu lists her active problems as including the same psychological issues identified in his March 11, 2019 notes, but adds Panic Disorder, and states in the review of symptoms that Plaintiff has "[a]nxiety with persistent worry about insomnia, relieved by medication, and depression."  There is no discussion by Dr. Prabhu regarding whether Plaintiff is able to work at the time of the report or in the future.  There is no mention of any functional limitations.  AR 648-653.

- AR 888.  October 29, 2020, PA Hartman's medical notes:  Plaintiff states she has been "going through a phase" of spending money, reports recent episodes of agitation, reports worse depression, crying, not leaving her room, frequent anxiety, panic attacks, and hearing a child calling mommy 2-3 times per month.  The next page of this report is the PA's Mental Status Exam showing Plaintiff has normal speech, concrete, logical, and goal directed speech, a slightly anxious affect, fair insight and judgment, and a fair mood.  Plaintiff's GAF was fair.  There is no mention of any functional limitation or whether Plaintiff is able to work.  AR 889.

What is remarkable about all of the above is that while they support and are consistent with Dr. Prabhu's list of Plaintiff's chronic and severe illnesses as stated in his August 2019, February 2020, and October 2020 letters (AR 627, 629, 779), nowhere in any of these carefully reviewed reports cited by Plaintiff does anyone opine that Plaintiff is disabled and incapable of working.  In fact, this statement is made only in one letter authored by Dr. Prabhu.  AR 779.  The other two letters authored by Dr. Prahbu reflect Plaintiff's then-current status of not working with reevaluation (AR 627) and an inability to perform her job functions.  AR 627, 629.

       Specifically, Dr. Prabhu's August 19, 2019 opinion that Plaintiff "is completely disabled" (AR 629) is, as the parties agree, a determination reserved for the ALJ.  *Tonapetyan v Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001); *see also Cerifka v. Kijakazi*, Case No. 4:20-cv-1884, 2022 WL

14

737950, at *15 (M.D. Pa. Feb. 8, 2022) (internal citations omitted). "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Ford*, 950 F.2d at 1155 (internal citation omitted). The August 19, 2019 finding is definitely brief, but also not supported by the clinical findings cited by Plaintiff summarized above.

The February 21, 2020 opinion offered by Dr. Prabhu refers to Plaintiff's psychiatrist, whose opinion is not offered anywhere in the record and not referenced by Plaintiff in her argument. AR 627. Further, in this opinion letter, Dr. Prabhu states that Plaintiff "is on temporary leave and still can't go back to work. Reevaluation schedule on July 2020." *Id*. This opinion, therefore, can be reasonably read to reflect a condition that is not permanent, but one worthy of reevaluation several months later.

Finally, the October 2020 opinion, while stating Plaintiff is disabled (again something the parties agree is a determination to be made by the ALJ) and "unable to be gainfully employed," does not articulate a set of limitations supported by the record to which Plaintiff points the Court. Nowhere in any medical record offered does anyone, other than Dr. Prabhu, indicate Plaintiff is completely incapable of working, under any conditions in any position. Thus, the ALJ's decision to find this opinion of limited persuasiveness is a rational interpretation of the record that must be upheld. *West*, 2019 362259, at *3 n.1.

Moreover, the Court finds that while it is possible to read Dr. Prabhu's statement as indicating Plaintiff was incapable of ever working as of October 2, 2020, it is equally reasonable to read the statement as something other than a permanent condition especially given that nineteen days later, on October 21, 2020, Dr. Prabhu stated Plaintiff was "*currently* unable to work." AR 34 *citing* AR 774 (Exhibit 22F at 4 of the record before the ALJ) (emphasis added). Because the information offered by Dr. Prabhu is "susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). The Court cannot substitute its judgment for that of the ALJ. *Fair*, 885 F.2d at 604.

Finally, Plaintiff's argument that the ALJ's failure to do a function-by-function analysis fails. This analysis is not required when the same analysis is available in the record. *Lind v. Astrue*, 370

Fed.Appx. 814, 817 (9th Cir. 2010) ("The ALJ is not required to repeat the function-by-function analysis [provided in the record]."). SSR 96-8p states that "the RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96–8p, 1996 WL 374184, at *3 (July 2, 1996). An ALJ performs a function-by-function analysis to avoid overlooking any of the individual's limitations or restrictions. *Id.* at *4. An ALJ does this by first identifying a claimant's "functional limitations or restrictions and assess[es] his or her work-related abilities on a function by function basis …." *Id.* at * 1. The ALJ then considers each function separately, even if the final RFC assessment will combine activities. *Id.* In this case, the ALJ took all of these steps as evidence in the Findings of Facts and Conclusions of Law at AR 24-34. The ALJ analyzed Plaintiff's functional capacity in detail and thereafter reached a residual functional capacity conclusion as stated on the bottom of AR 34 through the top of AR 35. The Court finds the ALJ did what the law requires and made no harmful error in the evaluation of Dr. Prabhu's opinions. *Owen v. Saul*, 808 Fed.Appx. 421, 423 (9th Cir. 2020) (unpublished) (Plaintiff "argues that the ALJ erred, because Dr. Bowes described clinical findings that supported her opinion. [Claimant] then summarizes other findings that support Dr. Bowes['] opinion. However, this simply highlights a conflict in the evidence. Resolving conflicts is the ALJ's responsibility and prerogative, and, because the ALJ's interpretation of the evidence is 'rational,' it must be upheld.") (internal citations omitted). There is nothing that supports the conclusion that the ALJ's decisions requires remand.

## X.     Order

Accordingly, IT IS HEREBY ORDERED that Plaintiff's Motion for Reversal (ECF No. 20) is DENIED.

IT IS FURTHER ORDERED that Defendant's Cross-Motion to Affirm (ECF No. 21) is GRANTED.

IT IS FURTHER ORDERED that the Clerk of Court shall close this case and enter judgment accordingly.

DATED THIS 19th day of May, 2022.

ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE